UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RAMON MURIC-DORADO,

Plaintiff(s),

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,

Defendant(s).

Case No. 2:18-CV-1184 JCM (EJY)

ORDER

Presently before the court is defendants Gerald Razzo, Cheryl Whetsel, Jesse Reynolds, Kimberly Shrewberry, Angela Patton, Richard Newman, Mitchell Green, and Cristopher Hunter's motion for summary judgment. (ECF No. 256). Plaintiff Ramon Muric-Dorado filed a response (ECF No. 270), to which defendants replied (ECF No. 276).

Also before the court is defendants Tutulupeatau Mataele,[1] Kyle Banagan, and Bryce Walford's motion for summary judgment. (ECF No. 258). Plaintiff filed a response (ECF No. 268), to which defendants replied (ECF No. 275).

Also before the court is defendant Tanya Vai's motion for summary judgment. (ECF No. 261). Plaintiff filed a response (ECF No. 269), to which Vai replied (ECF No. 277).

Also before the court is defendants Cesar Esparza, Kenneth Kelsey, James Portello, Rogelio Mariscal, and Douglas Taylor's motion for summary judgment. (ECF No. 262). Plaintiff filed a response (ECF No. 271), to which defendants replied (ECF No. 281).

---

[1] Defendant Tutulupeatau Mataele is named as "Maekaelee" in this suit based on a misspelling of the name. Plaintiff and defense counsel use the name Mataele in arguing the motion, and the court will do the same.

James C. Mahan
U.S. District Judge

Also before the court is defendant Raymond Bunch's motion for summary judgment. (ECF No. 263). Plaintiff filed a response (ECF No. 267), to which Bunch replied (ECF No. 274).

**I.    Background**

Plaintiff initiated a prisoner's civil rights action in June of 2018, alleging numerous deprivations of his constitutional rights by the Las Vegas metro Police Department ("LVMPD"), its officers, officers of the Clark County Detention Center ("CCDC"), and various other individuals and organizations. (ECF No. 1).

Plaintiff filed a second amended complaint pursuant to 42 U.S.C. § 1983. (ECF No. 15). When an incarcerated person seeks redress from a governmental entity or officer, or an employee of a governmental entity, federal courts must conduct a preliminary screening. 28 U.S.C. § 1915A(a). The court conducted such a screening of plaintiff's second amended complaint and limited the scope of his complaint. (ECF No. 22). Since the screening order, plaintiff has been able to identify the Doe defendants, and discovery has taken place.

The parties are intimately aware of the details surrounding the allegations that remain after the screening order, and the court need not recount them here. The defendants have collectively filed five motions for summary judgement, which the court addresses in this order.

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

**James C. Mahan**
**U.S. District Judge**

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*,

**James C. Mahan**
**U.S. District Judge**

- 3 -

*Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

"Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (footnotes omitted) (quoting Fed. R. Evid. 901(a)). "Th[e Ninth Circuit] has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).

However, the Ninth Circuit has more recently held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.").

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

**III.    Discussion**

As an initial matter, the court grants the parties' stipulation to extend the dispositive motion deadline (ECF No. 254) and considers all filings relating to motions to dismiss timely filed *nunc pro tunc*.

Although defendants have collectively brought five motions for summary judgment, each containing arguments pertaining to specific individual defendants, there are some commonalities. One such commonality is the issue of exhaustion under the Prison Litigation Reform Act ("PLRA"). Therefore, the court begins its analysis with the PLRA before moving on to the remaining arguments.

A.    Prison Litigation Reform Act

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies.

**James C. Mahan**
**U.S. District Judge**

- 5 -

*Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Plaintiff alleges that his failure to exhaust should not bar his claims because there were no remedies available. It is true that exhaustion is not required if the grievance process "operates as a simple dead end" or it is "so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 578 U.S. 632, 643 (2016). Additionally, exhaustion is excused "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Plaintiff states he failed to exhaust because he feared retaliation. The court is not persuaded by this argument. Plaintiff filed over 450 requests and grievances over the relevant timeframe. (*See* ECF No. 256, Ex. 33). The continued filing of grievances contradicts plaintiff's argument that he feared retaliation and that exhaustion should be excused. *Thomas v. Pfeiffer*, No. 1:23-CV-01232-SAB (PC), 2025 WL 1455549, at *11 (E.D. Cal. May 21, 2025), *report and recommendation adopted*, No. 1:23-CV-01232 JLT SAB (PC), 2025 WL 1744138 (E.D. Cal. June 24, 2025) ("Further, Plaintiff's own actions and statements belie his claim that he feared retaliation by Defendant if he filed a grievance."). Accordingly, the court will continue with the exhaustion analysis.

**James C. Mahan**
**U.S. District Judge**

- 6 -

### 1. CCDC Grievance Process

LVMPD Standard Operating Procedure ("SOP") 14.00.00 governs inmate requests and grievances. (*See* ECF No. 256, Ex. 31). The SOP states that the first step an inmate must take in filing a grievance is through informal means, such as verbally notifying staff of an issue. (*Id.*). An inmate can move past the staff member by going to the housing unit officer, who "shall notify the floor sergeant" of the informal complaint. (*Id.*). The floor sergeant will "attempt to informally resolve" the complaint upon notice. (*Id.*).

If the inmate is not satisfied with the outcome of the informal procedure, he must turn to the formal grievance process. (*Id.*). An inmate does so by submitting a written grievance. (*Id.*). During the time relevant to plaintiff's claims, inmates submitted handwritten grievances and later through a kiosk system.

When an inmate submits a grievance, the sergeant for the inmate's housing unit will review the grievance and provide a response. (*Id.*). If the inmate finds the response to be inadequate, he must appeal the decision up the chain of command from sergeant to lieutenant to captain and finally to the deputy chief. (*Id.*).

Because defendants have established that inmates at CCDC have an available administrative remedy, the court will next examine plaintiff's exhaustion.

### 2. Exhaustion

Plaintiff has failed to satisfy exhaustion for all applicable claims, and the court will briefly address each in turn.

### i. Count 12

Plaintiff claims that defendant Vai—a classification officer at the Clark County Detention Cetner—violated his Fourteenth Amendment due process rights by subjecting him to 406 days of maximum custody status without a hearing. However, the record shows that plaintiff never filed a grievance related to Vai's conduct. (*See* ECF No. 261, Ex. 13). Further, of the numerous grievances plaintiff submitted relating to the classification of his custodial status, he failed to exhaust any of them. Consequently, summary judgment is appropriate. *Albino*, 747 F.3d at 1166.

. . .

**James C. Mahan**
**U.S. District Judge**

ii. Count 13

The court allowed count 13 of plaintiff's claim to proceed on a variety of legal basis. (ECF No. 22).

Plaintiff alleges that defendants Esparza and Mariscal subjected him to unconstitutional conditions of confinement as protected by the Fourteenth Amendment when they did not allow him to exercise.  Plaintiff failed to exhaust the grievance process for these alleged issues.  (*See* ECF 262, Ex. 1).

Additionally, plaintiff failed to initiate the grievance process entirely for the following claims within count 13 (*See* ECF No. 256, Ex. 33 (all grievances)):

- Plaintiff's retaliation claim against Esparza for calling him a "snitch," in violation of the First Amendment.
- Plaintiff's retaliation claim against Portello and Kelsey for searching his cell and destroying legal papers in violation of First Amendment.
- Plaintiff's false conduct charges and his moving to a cold sell by Kelsey in violation of First Amendment.
- Plaintiff's claim that Portello and Kelsey used excessive force in violation of the Fourteenth Amendment, which also constitutes assault and battery under Nevada law.
- Plaintiff's conditions of confinement allegation against Taylor for failing to provide him with appropriate footwear in violation of the Fourteenth Amendment.
- Plaintiff's allegation that Bunch refused to provide him with proper shoes in violation of the Fourteenth Amendment.

Because plaintiff failed to exhaust the grievance process before initiating this lawsuit, summary judgment is appropriate for the above-mentioned claims.  *Albino*, 747 F.3d at 1166.

iii. Counts 16 and 17

Plaintiff alleges that defendant Mariscal 1) disposed of another inmate's commissary that was given to him, 2) refused to bring plaintiff his mail, and 3) refused to bring him blank grievance forms.  Plaintiff also claims that defendant Esparza violated his Fourteenth Amendment rights for disposal of commissary.  Plaintiff failed to file any grievances regarding these defendants' alleged

**James C. Mahan**
**U.S. District Judge**

- 8 -

misconduct and thus did not satisfy exhaustion; therefore, summary judgment is proper.  *Albino*, 747 F.3d at 1166.

### iv.  Count 18

This court's screening order permitted plaintiff to maintain three claims within count 18: (1) that defendants Reynolds, Newman, Patton and Green had allegedly retaliated against plaintiff for assisting other inmates with legal matters in violation of the First and Fourteenth Amendments of the U.S. Constitution, (2) that defendants Reynolds, Newman, Patton and Green had allegedly deprived plaintiff of his property without due process in violation of Article 1, Section 8 of the Nevada Constitution and the Fourteenth Amendment of the U.S. Constitution, and (3) that defendant Hunter improperly conducted a strip search in violation of the Fourth Amendment of the U.S. Constitution.  (ECF No. 22).

Plaintiff submitted multiple requests and grievances relating to claim 18, none of which were exhausted.  (*See* ECF No. 256, Ex. 18).  Accordingly, summary judgment is proper for count 18.  *Albino*, 747 F.3d at 1166.

### v.  Count 19

The court permitted count 18 to proceed against Shrewsbury, Razo, and Whetsel on the theory that they allegedly retaliated against plaintiff for assisting inmates with writing and filing civil rights lawsuits in violation of the First and Fourteenth Amendments.  (ECF No. 22).  Further, the court allowed count 19 to proceed against Shrewsbury, Razo, and Whetsel for allegedly intentionally depriving plaintiff of his property without due process in violation of Article 1, Section 8 of the Nevada Constitution and the Fourteenth Amendment of the U.S. Constitution.  (*Id.*).

Plaintiff again filed multiple requests and grievances related to count 19 yet did not fully appeal a single one.  (*See* ECF No. 256, Ex. 25).  Summary judgment is proper for count 19 in its entirety.  *Albino*, 747 F.3d at 1166.

### vi.  Count 23

Plaintiff alleges that defendant Mataele engaged in a campaign of harassment in retaliation for complaints plaintiff filed against him, in violation of the First and Fourteenth Amendments.

**James C. Mahan**
**U.S. District Judge**

- 9 -

Specifically, plaintiff claims that Mataele called him a "snitch," denied him exercise and tier time, issued false disciplinary write-ups, removed food from his meal tray, refused to collect his mail, threw away properly possessed toiletries, and made a death threat against him.

The record shows that plaintiff never filed a grievance against Mataele for any of these alleged actions. (*See* ECF No. 256, Ex. 33 (all grievances)). Thus, plaintiff did not exhaust the grievance process and summary judgment is appropriate. *Albino*, 747 F.3d at 1166.

B. Count 27: Failure to Protect

On August 26, 2019, plaintiff had conducted a status check at the Regional Justice Center. Inmate A—a CCDC inmate—was also in attendance at in the courtroom where plaintiff had his status check. Bunch escorted plaintiff, Inmate A, and several other inmates into an elevator to take them to the underground court holding area. Unexpectedly, Inmate A attacked plaintiff by headbutting him and lacerating his head. Plaintiff alleges that Bunch, who was in the elevator when the attack happened, failed to protect him from Inmate A.

The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Officials breach this duty when two requirements are met. First, "the risk the inmate is facing 'must be, objectively, sufficiently serious.'" *Sheltra v. Christensen*, 124 F.4th 1195, 1200 (9th Cir. 2024) (quoting *Farmer*, 511 U.S. at 834). Second, the official "must act with 'deliberate indifference to inmate health or safety,' meaning that [he] have subjective knowledge that the inmate faces 'a substantial risk of serious harm.'" *Id.* Deliberate indifference requires conduct that exceeds mere negligence but does not rise to the level of intentional harm or actions that are certain to cause injury. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir 2015).

Put another way, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, plaintiff cannot establish either element required to hold defendant Bunch liable for failure to protect. Plaintiff does not plausibly allege and support his assertion that he faced an objectively serious risk of harm. At the time plaintiff entered the elevator, he and all other inmates

**James C. Mahan**
**U.S. District Judge**

were restrained with belly chains.  (*See* ECF No. 263, Ex. 8).  Under these circumstances, it is unreasonable to suggest that a restrained inmate standing next to a law enforcement officer posed a serious threat.  The presence of physical restraints and the close officer supervision significantly diminish any potential risk.

Further, Bunch had no reason to believe that Inmate A would suddenly attack plaintiff.  Prior to entering the elevator, plaintiff and Inmate A had been together in the same courtroom, where they had a conversation that plaintiff described as "friendly in nature, and there had not been any kind of argument."  (ECF No. 263, Ex. 5).  Plaintiff himself did not anticipate the attack, and the court does not expect Bunch to possess the ability to predict the unexpressed intentions of inmates he escorts.

Since, plaintiff has failed to establish that Bunch violated his duty to protect, the court grants summary judgment on this claim.

C.  Denial of Grievance Process

Plaintiff makes multiple claims arguing that he was denied access to the court system when several defendants refused to process or incorrectly processed his grievances, in violation of the First and Fourteenth Amendments.  "The right of meaningful access to the courts extends to established prison grievance procedures."  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).  To prevail on these claims, plaintiff must show that he suffered an "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Specifically, he must demonstrate that the defendants' actions frustrated or impeded a "nonfrivolous legal claims."  *Id.* at 353.

1.  *Count 13: Mataele*

Plaintiff alleges that Mataele refused to collect a grievance on January 6, 2018.  However, plaintiff has stated that he dos not even remember what the grievance concerned.  (ECF No. 158, Ex. 5 at 115:25–118:8).

Plaintiff provides no evidence to oppose summary judgment on this claim.  Instead, he asks the court to treat the lack of supporting evidence and his word against Mataele's as a genuine dispute of fact sufficient to defeat summary judgment.  The court rejects this argument.

**James C. Mahan**
**U.S. District Judge**

Because plaintiff cannot identify the subject of the grievance, he has failed to show that Mataele's failure to collect it—assuming that Mataele in fact did not collect it—interfered with a nonfrivolous legal claim. Accordingly, summary judgment is appropriate on this claim.

### 2. *Count 22: Banagan and Walford*

Plaintiff alleges that Banagan and Walford denied him access to the court system by failing to properly route a grievance against defendant Mataele. The grievance at issue alleged that Mataele falsely accused plaintiff of passing commissary items. (ECF No. 15 at 75:18–24). However, passing commissary items between inmates is prohibited conduct and constitutes a level one rule violation. (ECF No. 258, Ex. 8 at LVMPD005216 (CCDC Inmate Handbook explaining that "[p]assing commissary, or being in possession of another inmante's commissary" is a level 1 rule violation)).

As a result, the grievance did not raise a nonfrivolous legal claim but instead challenged a valid disciplinary action. (*See* ECF No. 258, Ex. 10). Accordingly, plaintiff has failed to demonstrate that Banagan and Walford's actions caused an actual injury as required under *Lewis*, and summary judgment is therefore appropriate.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the following motions for summary judgment are GRANTED:

- ECF No. 256
- ECF No. 258
- ECF No. 261
- ECF No. 262
- ECF No. 263

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 12 -

IT IS FURTHER ORDERED that the parties stipulation for extension of time (ECF No. 254) be, and the same hereby is, GRANTED *nunc pro tunc*.

DATED January 30, 2026.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**